Good morning, ladies and gentlemen. Our first case for argument this morning is Huggins v. ABK Tracking. Mr. Telfian. Good morning, your honors, and may it please the court. My name is Phil Telfian, and along with my co-counsel, Lily Milwhip, I represent the plaintiffs, William Huggins and Hobart Miller. This court should reverse the district court's ruling below for three reasons. First, Rooker-Feldman does not apply to issues that are facially unmentioned in a state court order because unstated issues are necessarily consistent with any federal relief. Second, Younger cannot apply to third-party conduct that does not interfere with any state court proceeding. And third, the defendant's alternative arguments are improper without a cross-appeal because they would leave the plaintiffs in a worse position than we are under the district court's ruling. I'm prepared to elaborate on each topic, but I defer first and foremost to this court's questions. The rule we propose under the Rooker-Feldman doctrine directs district courts to look only at the text of state court orders. Mr. Telfian, before we get into that question, I want to make sure that I understand the current status of the two plaintiffs. Is either one of them now in prison? Neither is in prison, no, your honor. Is there a prosecution pending against either one of them? Not as it relates to the current charges, no, your honor. Forget the current charges. Is a prosecution pending against either one of them? I'm trying to figure out what the prospective effect of your request is. I see, your honor. Well, Mr. Huggins is still serving supervision under ABK as part of his probationary sentence, so he still has prospective effect. With regard to Mr. Miller, we believe the inherently transitory doctrine should apply to his case. Is he promising to violate the law again in the future? We don't think that's a requirement. Yes, it is. That's the holding of Weinstein against Bradford. For the inherently transitory doctrine? Yes. Then we respectfully ask this court to revisit that question, because under that rule it would be... Decision of the Supreme Court of the United States. We are not at liberty to upset their decisions. Understood, your honor, but under that rule it would be almost impossible for any pretrial litigation to be heard in federal court. Well, maybe so. That's what happened in Los Angeles against Lyons, as you may be aware. All right, so we have one of the plaintiffs is now still on supervision, so presumably there could be another revocation. Has any request for revocation of that supervision been made? I'm glad your honor asked the question, because our case does not hinge on revocation at all. Our case is tied to... Just answer my question, please, and then you can tell me why I shouldn't have asked it. We're not aware of a pending request for revocation, no. All right, now proceed. Turning to the Rooker-Feldman question, we believe the text of the state court order should control. As we've tried repeatedly in our briefing to direct the court's attention, the state court orders are available in the separate appendix at pages 168 and 214 for Mr. Huggins and Mr. Miller, respectively. Neither document mentions any of the fees that are being challenged in this case. Both state court orders do mention certain fees. For example, Mr. Huggins was ordered to a $60 per month pretrial services fee. I want to make very clear that's very different than the fees, the ABK's fees that were challenging in this court. Both individuals were subject to a $10 ID replacement fee, also completely different than the fees being challenged in this case. And I think it'd be, I guess, Gill Bank, the most recent decision by this court in regards to Rooker-Feldman somewhat answered that question regarding the fourth step. I would be interested if we sidestepped Rooker-Feldman and looked more at standing for each individual defendant. And so maybe starting with ABK, maybe ending with ABK might be the most helpful. But if we start with the judge, and I know there was a finding below that the judge was operating as a state official. And so why would we have standing? Well, we think we have standing against all three defendants. The first point I did want to make, though, is that we think these alternative arguments, because they weren't reached by the district court, would leave us in a worse position than we started with. To the extent it's a jurisdictional question, of course, this court can and should address it. But the arguments that the defendants are making, are reading, is mostly non-jurisdictional. With regard to the jurisdiction over Mr. Keeley, who is no longer a judge, we have sued him as the architect of what we believe is an unconstitutional conflict of interest. Without turning to the merits, he was, at least as the facts allege, the official who created the conflict. And so standing to answer Your Honor's question would be under ex parte young. Whether he was a state or county official, ex parte young, even as a state official, would give us right to seek prospective relief, either declaratory or injunctive. You just said that he is no longer a judge. What prospective relief would be available? We think under the ex parte young doctrine, the official, because we sued him in his official capacity, his replacement in office. If you sue him in an official capacity, you can't use ex parte young. If you sue him in an official capacity, you are suing the state. And, under will against Michigan Department of State Police, state officials are not persons for purposes of 1983. We would argue that the individual sued in their official capacity is still a proper defendant before this court. You argue that. How do you avoid will against Michigan Department of State Police? Only under the theory that he's being sued under ex parte young. That's our basis for jurisdiction. The holding of will is that states and state officials are not persons for purposes of 1983. It doesn't depend on the plaintiff's legal theory. It's a statement about who is a person. Understood. But to the extent that Mr. Keeley is viewed as a state official, we think ex parte young would apply. If he's viewed as a county official, would you have any authority for the proposition that we can just ignore will whenever somebody says, intones ex parte young? No, Your Honor. There is no such authority. But we also believe... You might want to stick with your claims against the other defendants. Thank you, Your Honor. We also believe that Mr. Keeley, in his role as designing the ABK program, was acting as a county policymaker. He wasn't acting on behalf of the state. You didn't raise that issue until your reply brief, so it's been abandoned. The district court said he acted as a state official. Now, you could challenge that in your opening brief, but I didn't see any challenge. Your Honor, we believe the district court improperly reached that issue because once the district court... No, Your Honor, we did not. No, you did not. It's been abandoned. Why don't we move to ABK tracking, and why do we have standing in regards to ABK tracking, Rooker-Feldman, and your argument doesn't apply? Would Your Honor clarify, you're saying if Rooker-Feldman does not apply? As long as Rooker-Feldman does not apply, there's complete jurisdiction over ABK. And as long as either plaintiff remains having standing, which at least Mr. Huggins does, there's jurisdiction over the parties and ABK. Rooker-Feldman is the only jurisdictional barrier that we're aware of that could possibly be argued against ABK. The district court did turn to younger abstention as well. I will note in passing, once the district court found that it had no jurisdiction under Rooker-Feldman, we think it's improper for it to have addressed the state or county issue or the younger issue. I don't see how there would be a younger problem if there is no current prosecution pending. Because that's the premise of younger. We agree, Your Honor. But that's why I began by making sure that nobody is now in prison, and there is no prosecution pending saying that somebody should go to prison for not paying ABK's fees. Thank you, Your Honor. We think that's one important reason why younger would not apply in this case. Even if there were pending prosecutions in this case, none of the relief we're seeking, we think the Gilbank rule is equally important in the younger context. This court should look at the relief. None of the relief we're seeking could possibly interfere with, even if there were ongoing state proceedings, there's no possible interference. What we think is important on younger is to note that this would be— I don't understand that at all. I mean, you don't need that argument. But when I was thinking about this case and your claim that ABK's fees are effectively disguised taxes, which, with money being returned to the state, the question that entered my mind is, would you make an equal argument against a criminal fine? We would not make an equal argument. Money raised from the defendant and put in the state coffers at the behest of state judges, right? And if you don't argue against the fine, I don't understand what's wrong with a disguised fine. Respectfully, Your Honor, we think that question turns to the merits of our case, which is— You should deal with it. I'm happy, Your Honor, to deal with it. We think under the state court jurisprudence, many of the cases before the court, like Burnett and Coleman, have held that fees not explicitly ordered in a state court are not valid. So in state court, if it was not part of the court order, it's not valid. There is some problem under state law. You need to be in state court. You can't be in federal court urging a state law problem. That's one of the holdings, not only of Will, but of Penhurst. Federal court lacks authority to render relief against a state based on an error of state law. Let me rephrase my question as a federal issue. Under the Federal Due Process Clause, when a state court judge orders a fine, we don't just assume the individual has received the process that is due to them. They've had a public hearing. They've had an appointment of counsel. They've had argument and so forth. Is there any problem with a hearing when somebody is— when there's a proposal to revoke release on account of not paying ABK's fees? On the merits of this case, the fee— I'm not asking about the merits. I'm asking about whether there is a hearing problem. If the judge opposes a fine and the defendant doesn't pay, there can be a hearing if somebody says he should be sent back to prison. I assume there's a hearing if somebody says they haven't paid ABK, please send him to prison. At least there's an opportunity for a hearing. It's an assumption Your Honor is entitled to make. But isn't that what happened here? There was a petition to revoke filed because of an inability to pay the fee? So there's two steps here. In this record, there is, to Judge Easterbrook's first part of the question, a judge never ordered the fees. So it automatically departs from the hypothetical you're raising. You have to deal with the hypothetical as it's phrased, rather than as you wish I had phrased it. I just want to clarify. In this case, a judge never ordered the fees. In the hypothetical that Judge Easterbrook says where a judge orders the fees, which did not happen in this case, it would be a radically different due process argument. I wish you would deal with the question as asked. As asked, our arguments would not apply to that case. In other words, we would not be able to succeed in that case. Critical in this case. I don't understand why not. The argument you're making in your brief is that there's some constitutional problem, conflict of interest, because a state judge is ordering the payment of money that may end up in the state coffers. That's why I asked about fines. It's an explicit order by the judge for money that ends up in state coffers. And if you don't think that's a constitutional problem, why does it become a constitutional problem if it's disguised in a way by being run through a third party? Thank you, Your Honor. Regarding count one, Your Honor is exactly correct. We would have the same argument. I thought I had taken myself down the wrong road with the due process clause. The hearing requirement would have been met in Your Honor's hypothetical, which would be a conflict of interest. Why is there a difference in ordering an explicit fine and ordering a payment of fees, part of which ends up in the state treasury? In either case, the judge is ordering the payment of money. To retract, Your Honor, on the conflict of interest claim, there would be no difference whether the judge ordered it. Regarding count two... So your argument is essentially attacking the constitutionality of fines and forfeitures, both of which extract money and it ends up in public coffers. In this specific case... I'm not asking about this specific case. I am asking about the general constitutionality of orders to pay money that end up in public coffers. In the general case, what this court should look to is the individuals who set up the arrangement and the individuals benefiting from it. In this case, the conflict is very strong because the individuals ordering the fees in the hypothetical that Your Honor is giving are the same individuals benefiting from it. In other words, the judge is able to satisfy his own coffers. I have one more question that I should ask you before your time expires, which is how would damages be available since neither of the plaintiffs is now in prison or on his way there? How would damages be available consistent with the principle of Heck against Humphrey? We don't think Heck against Humphrey can apply to cases either that are pretrial, which our case involves... This is not pretrial. The reason your clients are objecting is because they may be sent back to prison for not paying ABK's fees, and at least one that's happened to. The state court order returning Huggins to prison has not been reviewed or set aside. That's why I'm asking a Heck question. We don't see the Heck inquiry as being relevant to a pretrial order because state courts are powerless to reverse pretrial orders once those orders expire. Given that neither... I am talking not about pretrial orders, but about an order revoking the terms of release. That's what this litigation has been about. It's been your contention that release is revoked for failing to pay ABK's fees. Fine. That has to have happened to at least one of your clients, or there's never been a case or controversy. So I'm assuming it's happened. And then, if that order has not been set aside, how are damages consistent with that? To the extent this court reads our case as hinging on revocation, we seek leave to amend because we believe standing is proper at the moment any plaintiff had to pay fees to ABK. Even if there were no revocation, the loss of money, we think, creates damages under Article III. There was a revocation... You're not dealing with Heck. The Supreme Court assumed in Heck that damages would be available if the state judgment had been set aside. I'm asking how damages are available before the judgment returning Huggins to prison has been set aside. So we have two brief responses on Heck. Under the state court process, because revocation is a pretrial order, there is no way to reverse it. So we don't think Heck makes sense to apply... But you think... Let me be clear. Maybe this is weird. You think in Indiana somebody can be sent to prison, the keys be thrown away and have no appellate opportunities at all? We think a pretrial revocation... I don't... I am not asking about nomenclature. I am asking whether you are submitting, we will have to research this, that you are submitting that in Indiana, if you don't pay ABK's fees and you're sent back to prison, no appellate relief is available as a matter of law ever. I may narrow it on that specific question, but the revocations in this case are unreviewable. I am not asking about this case for the very last time. I asked a general question of law about Indiana law. So there are two pieces of Indiana law that would be relevant here. Whether the revocation is reviewable, which we think is not always the case. Not always the case. Exactly. What state law do you think we should look at? I think the court should look at a revocation that does not involve the individuals being sent back to jail. I asked you a concrete question. What state law should I look at? On that question, we would file a brief update on the state law after the argument. But regarding the fees, which are... We think a further briefing is necessary. We will let you know. Thank you, Counsel. Thank you, Your Honors. Thank you. Mr. Beaman. May it please the Court, Judge, Counsel, all in attendance, thanks for having us at the law school today. I want to address... I'm going to take 13 minutes to address my client, who is ABK Tracking. And I'm arguing on behalf of Judge Kiley here, the state of Indiana as well, if there's any questions with regard to that. Is he a judge? Judge Kiley, he is... Well, he is a judge, but he's... He was at all times a state official. It's very clear under Indiana law, a judge in Indiana is a state official, even in the concept that they're acting as a probation officer. I didn't pursue this with your adversary, but if he was sued in his official capacity and he's no longer a judge, the successor is substituted automatically under federal law. So who is his successor? That's a great question. I don't know the answer to that. But it's... You're suing... If you're suing the person in the official capacity, you're suing them in the context that they're the state of Indiana. And then there's judicial immunities and 11th Amendment sovereign immunity issues. You don't... You do not reach the 11th Amendment unless there is some statute authorizing a suit. Right? I've gone through this with your adversary under Will against Michigan Department of State Police. The states and their officials sued in their official capacity are not persons and therefore can't be sued in the first place. The Supreme Court has summarily reversed courts of appeals that have announced sovereign immunity rulings in such cases, pointing out that you can't have a sovereign immunity defense unless there's a claim. And I can't see the claim. Maybe I'm missing something. I agree with you. I don't see the claim either. I want to address first, back to your first point you brought up, Judge Eastbrook. Why is there no claim? Against Judge Kiley? Because he was not... He was not acting as an official of the county at the time. So he was not a policymaker. I want to address the mootness issue and the status of both of these individuals. Both Huggins and Miller  Full stop. Huggins... Supervised release, Mr. Huggins? No. So Huggins was unsupervised. He was... Petitioner revoke issues happened. He was removed from EHD, placed on the drug adult probation services, and then he was actually, because of the petitioner revoke, he submitted some false evidence in the underlying case, the subject of the order here. Was it a therapeutic work release? I assume he wasn't revoked. His release was revoked. Sorry, he wasn't revoked, yeah. His release was revoked more appropriately. So, I'm now even more confused. What is his status? Is he now on supervision or not? No, as of in the underlying case, which is 8-2-D-0-3-21-0-4-F-6-19-25, he was completed work release time served April 3rd, 2024. So he's not under any kind of supervision now? He got charged with a subsequent case and served that already, too, and it actually just expired. He was time served as of October 2nd, 2024. October 2nd? And that case is 8-2-D-0-3-23-0-3-F-6-14-50. That was also a Vanderburg County case. All right. It actually arose out of the submission of the false evidence in the underlying case. And he completed supervised release on the first case in April of 2024? April of 2024, correct. At the time of the filing, he was still under supervised release conditions? At the time of the filing of the complaint in this case? Yes, correct. All right. I want to address, the first thing that council brought up was the facial and whether fees were included in the order. Or how do we view that fees included in the order? I agree with Judge Brookman in this case that I think that's largely illusory in this case because I don't think you can separate the order that obligates that payment of the fee from the condition that they serve the sentence on AVK tracking or pre-trial. Inextricably intertwined argument. I hate to use that language. It's just, it's gone. It's just bye-bye. Yeah, I know. I'm not saying, I don't want to use the word inextricably intertwined. But the fee. If you're making the same argument by another name, it's just as gone as if you use that name. Well, I think that they provided supplemental authority in the Taylor case, for instance, right? And then in a subsequent case, I'm missing the name of that one off the top of my head right now. But basically, they're trying to argue in those cases that it actually has to be in the text of the order. So the fee would need to be in the text of the order. Now, I've read Gilbank numerous times. I've read. It's pretty simple. It's a good read. It's pretty simple. Right? Judge Kirsch wrote obviously the majority opinion on that. And I read your majority opinion not to. It is an opinion of the court. Yeah, sorry. It's an opinion of the entire court. These are not ad hominem arguments that don't work. Yeah, sorry, Judge. It's a majority opinion of the court. It's binding precedent on us. I read Gilbank not to be in accordance with that. Because what is cited in Gilbank are cases where Roker Feldman would still apply where you're seeking return of damages from that state court judgment. Okay? If damages were included in that judgment, nothing says it has to be actually in the text of that judgment. So what I'm hearing from you is the fourth step of Gilbank. The state court judgments were not the cause of the plaintiff's injury. No, I'm saying impliedly they were, even though facially it does not specify the fee in there. Now, my colleague brings up a good point. I think the plaintiffs have a great argument as to whether the fees should have been included. They absolutely should have been included. The Vanderburg County probation orders are deficient in my mind with respect to, if you read Burnett, Coleman, a number of those cases, there have been numerous challenges to probationary orders where they do not specify the fees that you're going to pay, even for drug testing. A lot of those came out of Marion County and it was an effort by the Marion County Public Defender's Office to address that concern. I think that's deficient, but that's a state court law violation. Burnett and Coleman are based on violation of the Indiana state law, not some constitutional basis. Could you make a constitutional argument about that? Sure, you could, but the reason why the fees are in there is a problem, a state law problem. Theoretically, they actually should be specified in there. So I also think that's another way to distinguish between whether it actually needs to be in the text or not. I'm lost again. Maybe they should have been there, but they aren't. So in what way would a federal judgment that the fees shouldn't be more than 20 bucks be inconsistent with the actual state judgment, as opposed to the wished-for state judgment? Well, I read Gilbank. I didn't ask you a question about Gilbank. I asked you a question about in what way would the federal relief be inconsistent with a judgment that doesn't specify the amount of fees? Then we can talk about Gilbank. It doesn't specifically specify the amount of fees, but what it does say is you are going to drug abuse probation services or you're going to adult abuse probation services and you have to comply with that order or the designated officials order, who is the third party. And it specifically sets forth that. Again, I agree. Suppose ABK says, I want you to run a marathon. I want you to run 26 miles or until you drop dead, whichever is first. The state judgment doesn't say that, but ABK says that. And you've been committed to the tender mercies of ABK. You come to federal court and say, I don't want them to kill me by forcing me to run a marathon. Would there be any inconsistency between a federal order saying, you don't have to run a marathon and the terms of the state judgment? Yes, because they were all understood based on plaintiff's own allegations and pleadings and statements. They understood that they had to pay for that service. They're not paying for the run. Why are you not listening to my question? I asked you if ABK just decides you've got to run a marathon or we're going to ask your probation to be revoked. What would be the inconsistency between a federal court order saying you don't have to run a marathon and the actual state judgment? Nothing. There would be no inconsistency at all, right? Agreed. It's a fulfillment problem. Agreed. Now, if there's no inconsistency there where this is all made up by ABK, why is there any inconsistency in the actual situation where the fees are made up by ABK rather than specified by the court? Because the fees are being paid for what's specifically set forth in the order, which is that drug abuse probation services or adult probation services. It's not like the order says nothing about the service that they have to comply with. But it says nothing about fees using Judge Easterbrook's... I agree. It says nothing about fees and it should say something about fees. But it doesn't. And it doesn't. So because it doesn't state anything about fees, why is the state court judgment then the source of the plaintiff's injuries? Well, if you disagree with my... I think it's impliedly attuned that I think we lose on Rooker-Feldman, period, based on Gilbeck. I still think you can affirm... I hate to introduce yet another line of cases, but I do not for the life of me understand what Rooker-Feldman could have to do with or ever has had to do with judicial orders that could send people back to prison. Right? The premise of the Rooker-Feldman doctrine is a statute that gives the Supreme Court of the United States exclusive jurisdiction in civil cases. The Supreme Court has never had exclusive jurisdiction in criminal cases. And in fact, 28 U.S.C. 2241 and 2254 allow federal courts to review the judgments of state courts in criminal cases. So how could Rooker-Feldman ever apply in a criminal case? Well, I think what we're talking about are the fees, not the being subject to... I'm not asking what you're talking about. I asked a general question of law.  the intellectual basis of the Rooker-Feldman doctrine and the two statutes providing for review in criminal cases, how can the Rooker-Feldman doctrine ever apply in a criminal case? That's a good question, and I don't think I fully understood it before Gilbeck. It's a question that we have to answer because Rooker-Feldman is jurisdictional. I agree. And we therefore have to answer this question whether you have argued it or not. Yeah, no, I agree. And in Gilbeck, you were dissented regarding the... Gilbeck was a civil case. I agree, but the heck of the verse Humphrey, this discussion we had earlier today with my co-counsel, obviously is, I think, subject to something that we'll have to explore as to whether it would actually bar this case in general in the first place. We also raised race judicata in the underlying case, and that wasn't a basis of the decision. 2241 and 2254 don't respect race judicata of state decisions either. Okay, thank you, Mr. Beaman. Thank you, Judge. Mr. Loberman. Good morning, Your Honors, and may it please the Court. My name is Bernard Loberman, and I'm a judge in Vandenberg County, and I know there's been some discussion on Judge Kiley's alleged relationship with Vandenberg County thus far, but... Are those two judges that implemented the orders in this case, are they county officials? No, they are not, Your Honor. What we made clear in our briefing, and based on this Court's decision in Woods, is that under Indiana law, Indiana trial court judges are state actors for the actions they take within that role.  what the appellants have suggested is that Judge Kiley was a county policymaker and administrator. It's paragraph 19 of their complaint, and I'm quoting, is a county policymaker and administrator as both head of the probation department and the architect of the ABK policy. That is exactly the premise that Judge Brookman analyzed in the briefing on the motions to dismiss, where he found that, based on those allegations, Judge Kiley could only be a state actor. He's not employed by Vandenberg County. He doesn't set policy for Vandenberg County. Any decisions that he takes with respect to probation administration and things of that nature, based on the Indiana Supreme Court's precedent in the Lake County case, those probation activities are also, the language they used was they are an arm of the trial court. They are not functionally distinguished from the trial court itself with respect to being state agents. If they're not county officials, why do we have standing? We don't have standing as to Vandenberg County because any claim against the county is not redressable, first and foremost. Any order that the trial court could have issued, whether it be on monetary relief or an injunctive relief, Vandenberg County would have no ability to redress. As the court pointed out earlier in the earlier colloquy, appellants did not pursue this issue in their opening brief before this court, and it wasn't until their reply that they suggested an alternative theory that the agency relationship was not with Judge Kiley, but with AVK directly. Setting aside, for the sake of argument, the waiver on that issue, I see my time has expired. Thank you, counsel. Thank you, Your Honor. Mr. Chalfie, I'll give you a minute for a moment. Just two brief points on rebuttal, Your Honors, and again, may it please the court. Count two in this case is a deprivation of property. We want to emphasize it before the court. It does not deter on revocation. It seeks damages. The damages do not turn on the pending status of either plaintiff. We think the damages claims are still alive. Both plaintiffs are putative class representatives for a putative class in this case, of course. Class certified? This case was dismissed on a motion to dismiss, so we have not yet even had the opportunity to move for certification. No, Your Honor, but we think the prospective claims could be held under a theory of a putative class, as many of this court's presidents have held. The count two in this case, not turning on revocation, is critical because it highlights the injury that we're seeking damages for, which was the moment ABK demanded fees absent any court orders, absent any judicial or due process authorization. We think that's an injury that on the merits should be heard in the district court. Thank you, Your Honors. Mr. Chalfie, and before you go, I ask you whether either of the two plaintiffs is still on supervision. And you said Huggins is still on supervision. Veman said expressly that his supervision has ended, both on the judgment that initially led to this case and on the subsequent one. Is that correct? I haven't spoken to Mr. Huggins since October 2nd, which was the date Mr. Veman gave. Get this off a docket sheet. You don't need to speak with him. Absolutely, Your Honor. I would like counsel to confer on this subject after the argument and to file a letter with the court with the correct information about whether Huggins is still on any form of supervision. We will, Your Honor. I would appreciate that. The whole court would appreciate that. Thank you. Thank you, Your Honors. The case is taken under advisement.